STANDARD MOTOR TRUCK CO. et al. v. PITTSBURGH RYS. CO. et al.

(District Court, W. D. Pennsylvania. December 19, 1913.)

No. 32.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BRAKE SHOE MECHANISM.

The Price patent, No. 818,639, for a brake shoe mechanism, discloses patentable novelty and invention only in the element of an automatically operated turnbuckle used in the combination to hold the brake shoe in contact with the wheel. As so construed, *held* not infringed.

In Equity. Suit by the Standard Motor Truck Company and another against the Pittsburgh Railways Company and the J. G. Brill Company. On final hearing. Decree for defendants.

Kay & Totten, of Pittsburgh, Pa., for plaintiff Standard Motor Truck Co.

Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., and Jos. L. Levy, of New York City, for defendants.

YOUNG, District Judge. The complainants, the Standard Motor Truck Company the licensee of W. G. Price, the patentee, and W. G. Price, have filed this bill of complaint against the Pittsburgh Railways Company and J. G. Brill Company for infringement of letters patent No. 818,639, dated April 24, 1906. While there are 55 claims in the patent, we think, from an examination of the patent, the record, and the evidence, that the whole controversy lies in the consideration of whether or not the respondents have infringed the forty-eighth claim. This claim comprehends the whole device involved in this suit and is as follows:

"In a mechanism of the class described, the combination with a brake shoe and support, of a link, a bolt pivotally connecting said link with said support, a nut on said bolt, a spring engaged by said nut for producing frictional contact between the link and support when the nut is tightened, connections between the link and brake shoe, and means for taking up the slack of the brake shoe."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The last element of this claim, to wit, "and means for taking up the slack of the brake shoe," is perhaps more elaborately and specifically described in the first claim as follows:

"In a mechanism of the class described, the combination with brake mechanism of a turnbuckle controlling such mechanism, and a spring within the turnbuckle for actuating the same."

This is explained in the specifications as follows:

"As best seen in Figs. 5 and 6, the turnbuckle 36 consists of the threaded bars 42 and 43, having their outer ends connected to the lower ends of the levers 34 and 37 respectively. A sleeve 44 is threaded onto the inner end of bar 42, and a similar sleeve 45 is threaded onto the end of bar 43. The sleeve 44 carries at its inner end a housing 46, completed by a disk 47, carried by sleeve 45, suitable bolts 48 48 being passed through said housing 46 and disk 47 for securing the same together. A rod 49 extends into the bar 42 and is fixed therein against rotation, but left free to move longitudinally independently of the bar 42 and projects from said bar into the housing 46. Rotation of bar 42 feeds the same into sleeve 44, and such longitudinal movement of said bar is independent of said rod 49. A spring 50 is fixed at one end of said bar 49 and is coiled about the same, and at its outer end is connected with a pin 51, fixed transversely within the housing 46 whereby the housing 46 is subjected to a constant rotary pressure designed to unscrew the sleeves 44 and 45, which action of the springs 50 insures the spreading apart of the lower ends of levers 37 and 34, whereby the shoes 32 will necessarily be retained constantly in contact with the wheels 10."

Examining these claims with the light given by the specifications, we find that the design of the inventor was as stated:

"The object of the invention is the provision of means for reducing to a minimum the amount of movement necessary for applying the brake shoes to the wheels. With this and further objects in view the invention consists, in combination with a truck frame and wheels supporting the same, of brake shoes for said wheels and means for normally retaining said shoes in contact with the said wheels. It further comprises a car truck, wheels supporting the same, brake shoes for said wheels, and a cushion retaining said shoes normally in contact with said wheel."

We find, then, that the object sought by the inventor was to provide means for normally retaining the brake shoes in contact with the wheels, and that the means provided by his patent, as set out in claims 1 and 2, were a turnbuckle comprising two bars, sleeves threaded thereon, a housing, and a spring within the housing. The purpose of this turnbuckle clearly appears from the patent to be that, as by the wearing of the brake shoe and wheel the space increases between them, the spring will rotate the bars into the sleeves automatically, thus forcing the bars apart and causing the shoes to be kept in contact with the wheel. This part of the invention concerns the keeping of the brake shoe in contact with the wheel after the shoe has been adjusted in a proper position in relation to the wheel.

Claim 48, then, with this explanation of the turnbuckle, consists of a combination, with a brake shoe and support, of a link, a bolt pivotally connecting said link with said support, a nut on said bolt, a spring engaged by said nut for producing frictional contact between the link and support, when the nut is tightened, and the same arrangement of bolt, spring, and nut connecting the link and brake shoe and means for taking up the slack of the brake shoe. In short, we have a brake hanger

consisting of a link pivotally connected by a bolt to the support, a nut on the bolt, and a spring placed between the nut and the side of the link, and the link pivotally connected with the brake shoe by a bolt having a nut thereon and a spring inserted between the nut and the side of the link.

1 and 1'—Sides of link.
2—Bolt through support.
3—Head of bolt.
4—Spring.
5—Nut.
6—Bolt through brake shoe.
7—Head of bolt.
8—Spring.
9—Nut.

In brief, the respective bolts which are used to attach the links to the support and to the brake shoe have placed between the links and the nut on the end of the bolt a spring which forms a cushion, and as the pressure of the nut on the spring is increased the link becomes immovable at the pivotal joints, thus preventing the brake shoe from receding from the wheel after it has been adjusted until the wear of the wheel and the brake shoe causes a space between them. We can thus see that the mechanism is used to hold the brake shoe in its adjusted position to the wheel, and the slight space caused by the wear of the wheel and shoe will be taken up automatically by the turnbuckle. The patent, then, we interpret as covering the automatic turnbuckle, its combination with the brake levers, the brake hanger, comprising a link, a bolt pivotally connecting the link with the support, having a spring between the adjustable nut on the threaded end of the bolt

and the link, and a bolt pivotally connecting the link with the brake shoe, having a nut on the adjustable threaded end of the bolt, and the spring inserted between the nut and the side of the link—these all being used in combination with each other.

Let us now inquire first whether or not the elements of this mechanism or the combination of them have been anticipated either by prior patents or prior use; and first as to the separate elements of the turnbuckle.

From an examination of the evidence, consisting of the patents offered, the evidence relating thereto, and the evidence of prior use, we have concluded that the only element new in the turnbuckle is the spring contained in the housing and its combination with the housing and sleeves and bars by which is accomplished the automatic spreading apart of the bars, so as to take up the slack caused by the wear of the wheels and brake shoe.

As to the elements of the brake hanger, we find in complainants' brief the following drawing which shows an enlarged sketch of the brake and hanger and its parts:

The designation of these parts, their connections with the bracket, and their purpose appear, from line 36 of page 2 of the specifications, to be thus described:

"Each bar 19 carries near each end thereof a bracket 21, secured between the plates of said bar and inclined inwardly from the bar. Depending from the upper free end of each bracket is a link 22, pivotally connected to said bracket by means of a bolt 23, extending through the bracket and through said link, said bolt being surrounded by a coil spring 24, disposed between the link 22 and the nut 25 of said bolt. The nut 25 may be adjusted against the spring 24 to any desired degree, for producing sufficient frictional contact between the link 22 and the bar 21 for retaining the said link in a given adjusted position."

And in line 59, page 2, the connection of the link with the brake shoe is described as follows:

"* * * Penetrated by a bolt 29, passing through the respective link and being provided with a coil spring 30, interposed between the link and the nut

*31* of the bolt *29*, whereby sufficient friction may be maintained between the link and the ear *28* for retaining the link and shoe in any given adjusted position."

As we have seen, this mechanism was for the purpose of producing sufficient frictional contact between the link *22* and the bar *21* for retaining the said link in a given adjusted position as to its connection with the bracket support, and the purpose of a like arrangement in the connection at the brake shoe was so that sufficient friction may be maintained between the link and the ear *28* for retaining the link and shoe in any given adjusted position.

The important element found in this mechanism is the placing of the spring between the nut and the link for the purpose of producing sufficient frictional contact to retain the link in its adjusted position. We find in the patents of McLeod, 330,251; Eames, 410,960; Hinckley, 475,014; Rego, 485,135; Holmes, 490,352; Ferguson, 493,491; Ritchie, 640,031; and Tesseyman, 620,724—that the device of taking up the slack caused by wear either in the wheels or brake shoes, or in the joints or journals of the braking device, had been patented before Price obtained his patent; but there remains the question whether or not there is novelty in the arrangement of springs in relation to the connections between the link and bracket, or support at the top of the hanger, and between the link and brake shoe at, the bottom of the hanger, for the purpose of maintaining the brake shoe in its predetermined adjusted position, when the brake is released. The use of springs for producing frictional contact was old, but the application of these means for the purpose of holding the brake shoe in its adjusted position was new, and therefore there was novelty in the means provided by Price and in his application of them.

We have found that the new element in the Price turnbuckle was the automatic taking up of the slack by means of the spring in the housing or sheath of the turnbuckle, and we have also found that there was novelty in the use of the spring to produce frictional contact between the link and bracket and the link and brake shoe, and novelty in the application of means to produce frictional contact for the purpose of holding the brake shoe in its adjusted position. Was there novelty and invention in the combination, consisting of a turnbuckle working automatically to always keep the brake shoe in contact with the wheel, and the application, by the use of springs, to produce such a frictional contact at the bracket and brake shoe that the brake shoe would always retain its adjusted position; the brake shoe being thus always kept in contact with the wheel by means of the turnbuckle, and the brake shoe being always kept in its adjusted position by the frictional device?

We have carefully considered the combination from this point of view, and have considered the evidence, and we are of opinion that there was both invention and novelty in the combination claimed in the Price patent. The invention is a very narrow one, and consists in using the automatically operated turnbuckle in combination with a brake shoe held in its predetermined adjusted position by means of the springs which produce frictional contact between the link and the

bracket and the link and the brake shoe, and that the purpose of this combination was to keep the brake shoe in contact with the wheel.

We now pass to the consideration of the question whether, or not the respondents have infringed this patent. The evidence shows beyond question that the respondents do not use in their structure the turnbuckle described in the Price patent, but do use an ordinary turnbuckle that must be manually adjusted from time to time, as the wear of the shoe and wheel, or of the other parts, requires. The evidence shows that the respondents use means described in the prior art to prevent rattling and to diminish wear, but not for the purpose of preventing the brake shoes from moving away from the wheels upon the release of the brake. The evidence shows conclusively that the springs employed by the defendant do not and are not intended to produce such frictional contact as will prevent the brake shoes on the release of the brake from moving away from the wheels, and that the brake shoes of defendants' structure do move away from the wheels. The evidence, therefore, in our opinion, does not show that the defendants in their structure have infringed the Price patent, as we have interpreted that patent.

The bill will therefore be dismissed, at the cost of complainants. Let a decree be drawn accordingly.